279

Calvin L. WEESE, Jr., Plaintiff,

v.

Jay S. SCHUKMAN, M.D., Defendant.

Civ. A. No. 91–1481–MLB.

United States District Court,
D. Kansas.

April 8, 1993.

Mark B. Hutton, Michaud, Hutton & Bradshaw, Wichita, KS, for plaintiff.

Steven C. Day, Woodard, Blaylock, Hernandez, Pilgreen & Roth, Wichita, KS, Michael R. O'Neal, Gilliland & Hayes, P.A., Hutchinson, KS, Lisa Jane Lewis, Turner & Boisseau, Chartered, Great Bend, KS, for defendant.

## ORDER

BELOT, District Judge.

Before the court are defendant's "Motion for Clarification and Reconsideration" and plaintiff's response and addendum in opposition thereto (Docs. 84, 86 and 88). Defendant's motion pertains to the court's rulings regarding the use of expert witnesses made at a July 6, 1992 hearing and at the December 14, 1992 pretrial conference.

The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. *Comeau v. Rupp*, 810 F.Supp. 1172 (D.Kan.1992).

The Federal Rules of Civil Procedure do not provide for motions for "clarification and reconsideration." Motions for reconsideration are a creature of Rule 206(f) of this court and must be filed within ten days after the entry of the order or decision unless the time is extended by the court. The local rules contain no provisions for motions for "clarification." Defendant's motion was filed on March 19, 1993. Since the ruling complained of was made, at the latest, on December 14, 1992, defendant's motion is out of time and can be denied on that basis alone. However, it also may be denied for the following reasons.

This case was filed on November 18, 1991. Counsel for defendant Schukman entered his appearance on November 27, 1991 and defendant Schukman's answer was filed on Decem-

ber 5, 1991. On January 27, 1992, a scheduling order was entered which provided that counsel exchange proposed lists of witnesses by May 15, 1992 (Doc. 22). On April 29, 1992, plaintiff served upon defendant his first set of interrogatories which requested information regarding defendant's expert witnesses (Doc. 33). Plaintiff represents that these interrogatories have never been answered and the court can find nothing in the court file to indicate that they have been.

On May 22, 1992, defendant filed his initial list of witnesses and exhibits (Doc. 40). The treating physicians who are the subject of the instant motion (Doctors Fitzgerald, Von Ruden, Svoboda and Brozek) were not specifically listed. However, defendant's list did make reference to unnamed medical personnel who treated plaintiff at various facilities and it may be that the physicians fall in that category. An additional witness, Dr. Kharidi, was specifically listed. On May 22, 1992, Dr. Kharidi was a defendant. He since has been dismissed.

On June 25, 1992, defendant filed his motion to extend the time for designation of expert witnesses (Doc. 49). After a hearing on July 6, 1992, defendant's motion was granted. The journal entry memorializing the court's ruling, which was filed August 24, 1992 and was approved by all counsel, provided as follows:

8. Defendants are to provide complete written reports from all experts. Defendants have until August 7, 1992, to identify their experts. Said experts must supply copies of articles relied upon or citations. Plaintiffs' experts, Myers and Hollis, must also provide the literature or cites to what they relied upon;

9. Defendants' expert reports are due August 21, 1992.

Defendant filed his designation of expert witnesses on August 7, 1992 (Doc. 62) and an amended designation on August 25, 1992 (Doc. 65). Treating physicians Fitzgerald, Von Ruden, Svoboda, Brozek and Kharidi were designated along with a Dr. Lauren Welch, defendants' retained expert.

A transcript of the December pretrial conference has been filed (Doc. 89). The discussion regarding defendant's experts appears on pages 3–9. Defense counsel's explanation regarding the testimony of the so-called treating physicians who are the subject of the instant motion is as follows:

Mr. O'Neal: This case involves our designation of expert witnesses. This is a carbon monoxide poisoning in which four out of the five doctors that we have listed were treating physicians. One of the claims is that this individual should have been referred to a hypobaric oxygen therapy treatment center. We have listed treating physicians as experts simply to talk about their care and treatment; and as I mentioned in my pretrial order, they'll testify concerning what they considered the standard of care for treating hypobaric—or treating carbon monoxide poison patients and basically gets down to a question of availability and efficacy of one treatment versus the other. So they're basically testifying as treating physicians. Those four. With the exception they're obviously going to be asked questions about why one method of treatment rather than the other. The depositions of those individuals have been set up by plaintiff's counsel and we visited by telephone about whether or not there was anything more than just the medical records and I indicated that basically we were referring to the medical records and I didn't—perhaps erroneously so, felt that that would satisfy since we're not talking about outside experts who are coming in taking cold review of the records and submitting a report. We're basically talking about treating physicians. Basically, I've outlined in summary what they would testify to. If we need any more specifics or if they need time to depose those particular experts, I have no particular problem with that. Obviously as to the one outside expert who is reading the cold record and providing the report, that has been done and his deposition has been taken. That's Dr. Welch.

The court: So the ones that we're talking about are these individuals who were actually treating physicians who may be expressing their opinion on standard of care, something like that?

Mr. O'Neal: That is correct.

The court: Yes.

Ms. Pankratz: Your honor, in order to verify that what Mr. O'Neal's experts were going to testify to, after the court's order was entered we sent him interrogatories specifically asking what their opinions were going to be. If they were going to testify. Mr. O'Neal's response was: See designation of expert testimony. And in there he said: See medical records. He provided no additional information on what they were going to testify to. We didn't take their depositions because we felt they were only going to testify to what was in their medical records and we simply couldn't gain any additional information from taking their depositions. Now he is trying to come back and use them on the standard of care and causation and I think it's inappropriate at this time.

The court: Well, did you advise them, Mr. O'Neal, that you intended to use these doctors for standard of care or causation?

Mr. O'Neal: Your honor, I suspected that's what I was doing when I listed them, not as witnesses, lay witnesses or as non-expert witnesses, but as expert witnesses. And I will apologize for any confusion because we did have—their depositions were indeed scheduled and I thought that they would go ahead and be taken and they were not taken. I certainly don't want to mislead anybody about this, but it certainly can be anticipated that what the treating physicians were going to do is talk about the care that they rendered by that—

The court: Well, I agree.

Mr. O'Neal: And why they didn't do certain things.

The court: I agree that you'd expect them to talk about the standard of care that they rendered; but that's quite another step to say that they are going to testify about the standard of care applicable to the defendant. I mean, that to me is kind of a quantum leap there.

Mr. O'Neal: Well I have no problem with providing what I believe is a summary and letting them take their deposition. Whatever the court wants to do.

Ms. Pankratz: Your honor, I believe the time has passed for that. The court—it still remains that the court entered a order on—that was filed on August 24 and it very clearly specifies defendants must produce written expert reports. Mr. O'Neal signed it. And I think he should be precluded from introducing any expert testimony from the treating physicians.

The court: Here's what I'm going to do. I don't see how my order can be any clearer. It says defendants are to provide complete written reports from all experts, and it goes on to say that those are due August 21, 1992. If the defendants had any question about what they were supposed to do then they could have brought that to me. And nobody did. And I don't think that the defendants are being sandbagged here by what the plaintiffs are requesting, plaintiff, I guess, is requesting. The defendant apparently has a causation and standard of care expert and these other doctors can testify as to what they did with respect to this plaintiff. So it's going to be order of the court that these other experts, I don't know who they are, but other than hired expert, the treating doctors anyway, may testify as to what they did with respect to the plaintiff, but I'm not going to allow them to give any opinions with respect to either causation or standard of care.

In his motion, defendant argues that the treating doctors should be considered "ordinary witnesses" because they are not experts retained for trial within the meaning of Rule 26(b)(4) Fed.R.Civ.P. Defendant contends: "as ordinary witnesses, there is no requirement that defendant Jay S. Schukman, M.D. provide plaintiff with a copy of any separate medical report other than those reports and records which these expert treating physicians generated at the time of their treatment of the plaintiff." The court does not agree.

First, defendant knew from plaintiff's proposed pretrial order that an issue would be presented with respect to the scope of the "treating physicians'" testimony. Nothing prevented defendant from making the arguments at the pretrial conference which he now seeks to make in the instant motion. He did not do so. Second, defendant could

have raised the arguments in a timely motion to reconsider. He did not do so.

Third, defendant's arguments are without merit in any event. The court's July 6, 1992 order unequivocally required complete written reports from *all* experts. The court cannot accept the suggestion that defendant's counsel was somehow mislead by this order to believe that it applied only to retained experts. If defendant intended to use the treating physicians to give opinions regarding standard of care, defendant's counsel had to know that this would be considered expert testimony. No lay or "ordinary" witness could state such an opinion. If defendant had any questions regarding what the court meant by "all experts," he could have requested reconsideration before he approved the journal entry memorializing the July 6 hearing. He did not do so and he did not provide any reports of the treating physicians.

Defendant now contends that neither the Federal Rules of Civil Procedure nor the local rules speak to the requirements for expert's reports and that plaintiff's medical records should be deemed to meet the court's requirements for reports of the treating physicians. The court disagrees. Defense counsel is an experienced, able lawyer. Counsel who practice in this court and in the courts of Kansas know that experts' reports are usually much different from medical records. Experts' reports in medical negligence cases usually summarize the expert's opinion regarding standard of care, among other things. It would be most unusual, if not actually unheard of, for medical records of a treating physician to speak to the standard of care employed by another physician. Defendant's counsel simply could not have been mislead by what the court was requiring in his July 6, 1992 order but if he was, he failed to file a timely motion for reconsideration.

In summary, the court finds that defendant's motion, even if it had been timely raised, is without merit. Defendant has not been prejudiced by the court's ruling. Defendant may testify regarding the standard of care and causation, as may defendant's retained expert, Dr. Welch. The treating physicians may testify regarding their care and treatment of plaintiff and their testimony may be used, as appropriate, to support the standard of care and causation opinions of defendant and his retained expert. Any testimony by the treating physicians regarding causation and standard of care would be subject to objection on the grounds that it is cumulative, assuming adequate foundation could be laid for such testimony.

Accordingly, defendant's motion for clarification and reconsideration (Doc. 84) is denied.

IT IS SO ORDERED.